IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERROL FULFORD-EL                              *
        Plaintiff,
vs.                                           *  CIVIL ACTION NO. WDQ-06-1095

CAPTAIN K. ARNOLD                             *
        Defendant.
                                   ***

**MEMORANDUM**

I.   Background

On May 1, 2006, this Court received for filing a "Motion for Instant Civil Action 1983," which was re-characterized as a civil rights action seeking injunctive relief. Plaintiff, who is confined at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, alleges that he was sent to the Special Observation Housing "SOH" where he was placed on the "punitive meal" of food loaf and denied: (i) drinking water for 31 hours; (ii) showers, clothes, and bedding; and (iii) legal materials, outgoing or incoming mail, writing materials, and access to the legal library. Paper No. 1. As a separate issue, Plaintiff claims that he was denied help for his February 14, 2006, attempted suicide when correctional officers covered up the incident and he continues to be denied mental health care for his "mental rage" and other problems. *Id.* He asks that a restraining order be placed against NBCI Captain Arnold and Correctional Officers DeFipaulh and Iser.[1] *Id.* at 3. Plaintiff was later permitted to amend his Complaint to include allegations concerning the conditions of his cell when he was returned from SOH and injuries he experienced from the use of hand and leg shackles. Paper Nos. 4 & 7.

---

[1] In his opposition response Plaintiff requests injunctive relief in the form of a transfer to another prison which can provide him medical and mental health care. Paper No. 14.

Defendant was directed to file a show cause response to the Complaint for injunctive relief. His response, which contains extensive medical and mental health records along with declarations from Officers Arnold, DeFipaulh and Iser, was construed as a motion for summary judgment and Plaintiff was afforded notice and opportunity to submit a response, which he has filed. Paper Nos. 5, 7-8, & 14. The Complaint may be determined on the pleadings without oral hearing. See Local Rule 105.6. (D. Md. 2004). For reasons to follow, Defendant's summary judgment motion shall be granted and the Complaint for injunctive relief shall be dismissed.[2]

II.   Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving

---

[2] Plaintiff's original and amended Complaints for injunctive relief named Captain Arnold as the sole Defendant. In his opposition response, Plaintiff claims, for the first time, that: (1) Officer Iser and other unidentified correctional officers ignored his suicide attempt in February of 2006; (2) his placement on SOH was in retaliation for his representing other inmates at disciplinary hearings ; (3) Officer Defibaugh touches him in an inappropriate manner every time he is handcuffed and has otherwise sexually harassed him; and (4) he was denied his asthma medication in April of 2006. *Id.* In addition, the opposition contains an eleventh-hour damage relief request in the amount of $900,00.00. While summary judgment shall be entered as to the original and amended complaint allegations against Defendant Arnold, the Court shall dismiss the aforementioned damage claims without prejudice.

2

party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element...necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

Further, where as here an inmate is seeking injunctive relief in conjunction with his constitutional claims,[3] relief may only be granted if the inmate can demonstrate: (i) the likelihood he will be irreparably harmed if emergency relief is denied; (ii) the likelihood that defendant will not be harmed if the requested relief is granted; (iii) the likelihood that the inmate will succeed on the merits; and (iv) the public interest will be served if the injunction is granted. *See Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 195-96 (4th Cir. 1977).

---

[3] Plaintiff has in effect raised conditions of confinement, medical, and access-to-courts claims which implicate the Eighth and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 353-55 (1996); *Farmer v. Brennan*, 511 U.S. 825, 832 & 835 (1994); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Under these standards, Plaintiff must show that: (1) he suffered from a serious deprivation or medical condition; (2) that parties acted with deliberate indifference to his safety or health; (3) he suffered more than de minimis injury; and (4) the lack of access to his legal materials negatively affected his ability to litigate his cases.

III.   Analysis

NBCI is a new facility affiliated with the Division of Correction's Western Correctional Institution. Plaintiff arrived at NBCI in August of 2005. The record indicates that between that time and May 26, 2006, he has been seen by mental health staff on 24 occasions. Paper No. 5, Ex. 1. The initial contacts involved medication review, orientation, mental health follow-ups, and level system review. *Id.* On February 1, 2006, a mental health assessment was performed due to Plaintiff's declaration of a hunger strike. On February 14, 2006, he was seen by mental health staff because of his report of having taken an overdose of heart medication. *Id.* He was placed under observation and treated by medical staff. Paper No. 5, Ex. 1. The record shows that his vital signs were normal. *Id.* He was prescribed Ipecac as a precaution.[4]

On April 13, 2006, Plaintiff broke off the sprinkler head of the shower and flooded his cell. It was decided to place him in SOH to isolate him and closely observe and assess his behavior. A mental health assessment was performed prior to the cell extraction to SOH and Plaintiff was placed on a punitive management meal or "food loaf" after consult with medical and mental health staff. *Id.* Additional assessments were performed on April 15, April 17, and April 18, 2006. *Id.* The mental health staff determined that although Plaintiff had difficulty controlling his temper, his condition did not meet the criteria of any major mental illness. *Id.* He was returned to regular housing on April 20, 2006 *Id* That same date, however, he flooded his cell on regular housing and was returned to the SOH. *Id.* Four days later, back in regular housing, he again flooded his cell. *Id.* This resulted in emergency contact with mental health staff and several mental health follow-ups.

---

[4]   Plaintiff claims the he was never provided the Ipecac. Paper No. 14.

4

*Id.* On May 12, 2006, Plaintiff was seen by a psychiatrist. On May 17, 2006, he flooded his cell again.[5] Paper No. 5, Ex. 1.

According to the record, mental health staff has consistently found that Plaintiff's condition does not meet criteria for a diagnosis of a serious mental disorder. Defendant states that Plaintiff has indicated that he does not want to return to regular housing and has attempted to "bargain" for a longer stay in SOH despite the stabilization of his behavior. *Id.* Plaintiff is being followed by a number of mental health personnel, including a psychiatrist who is helping him control his temper with medication. He is also participating in an "in-cell" cognitive program while being housed on disciplinary segregation. Paper No. 5, Ex. 1.

Defendant states that the temporary deprivations of which Plaintiff complains were the result of his destructive behavior and staff concerns for his safety and that of other prisoners. Paper No. 5, Ex. 2B. The exhibits show that since his arrival at NBCI, Plaintiff has been found guilty of ten institutional rule violations, involving the destruction of state property and assaults and threats on staff. Defendant maintains that Plaintiff has repeatedly and willfully flooded his own cell and portions of his housing unit's wing. After each incident he was placed temporarily in a "safe" cell and momentarily deprived of property that could be destroyed or that could be harmful to him or others.[6]

---

[5] On May 19, 2006, Plaintiff was seen by medical personnel for complaints of pain to his right wrist and pinky finger. Paper No. 5, Ex. 1. He was diagnosed with mild carpel tunnel syndrome and was directed to wear a wrist brace for 3 months. *Id.* In addition, medical personnel directed that Plaintiff be double-cuffed for 3 months to reduce wrist strain. *Id.*

[6] In his original Complaint Plaintiff alleges that three correctional officers "have made threat against my life and sexual assaulted." Paper No. 1 at 3. These officers deny such allegations. Paper No. 5, Exs. 2A, 3, & 4, Arnold, Defibaugh, and Iser Decls. In any event, mere verbal threats are not actionable under § 1983. *See Barney v. Pulsipher*, 143 F.3d 1299, 1310 n. 11 (10th Cir. 1998); *accord Shabazz v. Pico*, 994

Based upon the materials presented to the Court, injunctive relief shall be denied. Due to his disruptive behavior, from February to May of 2006, Plaintiff was assigned to the SOH on several occasions. These assignments were of short duration. Plaintiff's mental health and medical conditions have been repeatedly assessed. He has shown no evidence of acute psychosis. Nonetheless, he continues to receive medication and programming from mental health staff. The undersigned concludes that Plaintiff is receiving constitutionally appropriate care for his diagnosed adjustment disorder and carpel tunnel syndrome while confined at NBCI. There is no showing that he would be subject to immediate harm if he was not afforded the relief he seeks (prison transfer).

IV. Conclusion

For the aforementioned reasons, Plaintiff's Complaint for injunctive relief shall be dismissed. Defendant's summary judgment motion shall be granted. A separate Order follows.

Date: 9/29/06

William D. Quarles Jr.
United States District Judge

---

F.Supp. 460, 474 (S.D. N.Y. 1998) ("verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right" under section 1983); *see also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980); *Partee v. Cook County Sheriff's Office*, 863 F.Supp. 778, 781 (N.D.Ill. 1994) (inmate's "allegations of verbal threats, racial epithets, and continued harassment" failed to meet objective component of Eighth Amendment).